**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL EXPERIENTIAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-4551 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| NIKE, INC., and WIEDEN + KENNEDY, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In February 2020, the City of Chicago hosted the NBA All-Star Game. The festivities attracted a lot of attention – and a lot of business. It opened up a world of opportunities when it came to marketing.

National Experiential, a marketing and advertising agency, decided to take full advantage of the marketing bonanza. It landed a contract with Nike. National Experiential planned to promote Nike by projecting light shows onto two skyscrapers in downtown Chicago.

The display would feature a jaw-dropping, gravity-defying feat by a Chicago Bulls legend. It would show a video of Michael Jordan's unimaginable, unforgettable dunk during the 1988 slam-dunk contest, plus the Nike "Jumpman" logo.

The contract didn't end there. National Experiential also would project a "bat signal," a Batman-style laser display, from the United Center, the venue for the All-Star Game. And it covered something called "guerrilla" marketing teams, too.

A few days before the All-Star Game, National Experiential ran into trouble with an all-too-common foe that strikes fear in the hearts of the fearless: permits.

National Experiential didn't have one. So the project fell apart.

National Experiential responded by suing Nike and Wieden + Kennedy (an ad agency). It filed two other lawsuits against other relevant players, too, including the City itself. Defendants, in turn, moved to dismiss.

For the reasons stated below, the Court grants in part and denies in part the motion to dismiss.

## Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

## I.    MacDonald Media Contracts

National Experiential is an advertising and marketing agency. *See* Second Am. Cplt., at ¶ 2 (Dckt. No. 49). It draws attention to its clients and heightens brand awareness through laser projections, custom digital installations, and street-level displays. *Id.*

In July 2019, MacDonald Media – acting on behalf of Nike, Inc. and ad agency Wieden + Kennedy – contacted National Experiential about an advertising project in Chicago during the NBA's 2020 All-Star weekend (February 14–16, 2020). *Id.* at ¶¶ 7–8, 11.[1] The project included four components. *Id.* at ¶ 6.

The first two parts involved laser-light projections on skyscrapers. The idea was to show images to promote Nike. One laser projection would appear on the Aon Center (a skyscraper on

---

[1] The operative complaint includes paragraph 6 twice, and paragraph 7 twice. *See* Second Am. Cplt., at 2–3 (Dckt. No. 49). The Court's references here are to the first number 7, and to the second number 6.

the north end of Millenium Park in downtown Chicago). *Id.* And a second laser projection would appear on the Prudential Building, a shorter, wider skyscraper located west of the Aon Center. *Id.*

Millenium Park is a jewel in downtown Chicago. It is a massive park in the heart of the City, in between the Loop and Lake Michigan. It is chock-full of sculptures, paths, and well-manicured greenery. It boasts a 4,000-seat amphitheater, an interactive art display with a water feature called *Crown Fountain*, and even an ice-skating rink. Millenium Park includes the iconic "Cloud Gate" sculpture, affectionally called "The Bean."

The skyscrapers on the north end of Millenium Park – the Prudential Building and the Aon Center – often provide a canvas for messaging through illuminations. Anything projected on those buildings is a real eye-catcher for that part of the City, especially everyone trapped in heavy traffic on Lake Shore Drive.

Sometimes the Prudential Building and the Aon Center are lit up to celebrate an event or raise awareness, like green for St. Patrick's Day or pink for breast cancer. Sometimes the buildings turn on the interior lights in certain rooms (only), and spell words. When the lights are viewed from afar, the lights look like letters, making what looks like a gigantic Lite-Brite.

And sometimes the buildings have advertisements displayed on them, through laser light shows or other illumination. That's what National Experiential planned to do for Nike.

The other two parts of the National Experiential contract involved different types of marketing. National Experiential would project an advertisement reminiscent of the "bat signal" from Batman on the outside of the United Center, the home stadium of the Chicago Bulls and the site of the All-Star Weekend events. *Id.* The company also would deploy three "guerrilla" marketing teams around Chicago, across three straight nights, to assist with projections. *Id.*

3

In November 2019, National Experiential and MacDonald Media entered into three separate contracts. *Id.* at ¶ 13. One contract involved the projection on the Aon Center, and a second contract involved the projection on the Prudential Building. A third contract covered both the United Center bat signal and the guerilla teams. *Id.*

In December 2019, MacDonald Media terminated the trio of contracts and replaced them with a single, two-page document. *Id.* at ¶ 14. The new contract provided that National Experiential would receive separate consideration for each of the four projects: (1) $5,000 to project a "bat signal" on the United Center; (2) $165,000 to deploy the guerilla teams; (3) $505,000 for the Aon Center projection; and (4) $525,000 for the Prudential Building projection. *Id.*; *see also* 12/20/19 Contract (Dckt. No. 49-2).[2]

The contract contained a cancellation provision that required 60 days' notice "prior to posting" of the advertisements. *See* Second Am. Cplt., at ¶ 17 (Dckt. No. 49); *see also* 12/20/19 Contract (Dckt. No. 49-2).

Another provision required photographic proof of performance before the processing of payment. National Experiential needed to prove performance within five days for each of the four parts of the contract. *See* 12/20/19 Contract (Dckt. No. 49-2) ("At least 1 close up and 1 approach photograph of each creative execution posted must be provided in order for payment to be processes [sic]. Approach photos should show the unit in its environment – as it reads to riders and/or pedestrians/vehicular traffic seeing the unit.").

---

[2] The contract attached to the operative complaint states that the value of the Prudential Building component of the contract was $525,000, whereas the operative complaint states the value as $550,200. *Compare* Second Am. Cplt., at ¶ 14 (Dckt. No. 49), *with* 12/20/19 Contract (Dckt. No. 49-2). The contract between MacDonald Media and *Wieden + Kennedy* (as opposed to the one between MacDonald Media and *National Experiential*) lists the value of the Prudential Building project at $550,200. *See* 12/17/19 Contract (Dckt. No. 49-1). The other numbers listed in paragraph 14 match the numbers in the contract between MacDonald Media and National Experiential. So, the Court assumes that $525,000 is the correct figure.

A few days before inking the contract with National Experiential, MacDonald Media executed a contract with Nike and Wieden + Kennedy.  *Id.* at ¶ 6.  The underlying contract looked like the contract between MacDonald Media and National Experiential, but with slightly higher prices.  *Id.*  Project 1 was valued at $5,200; Project 2 at $172,920, Project 3 at $529,240, and Project 4 at $550,200.  *Id.*; *see also* 12/17/19 Contract (Dckt. No. 49-1).

## II.    The Pregame

With the MacDonald Media contract in hand, National Experiential began prepping for the All-Star weekend.

In December 2020, National Experiential contacted MB Real Estate, a private company that manages Chicago's Millennium Park.  *See* Second Am. Cplt., at ¶ 19 (Dckt. No. 49).  Jonathon Scott, Millenium Park's private events manager, told National Experiential that he "had checked with the city and they feel as long as you have permission from the buildings, there shouldn't be a Special Event Permit Application needed."  *Id.*  Scott said that he would send a letter to the City with details about the project, "so no surprises pop up."  *Id.*

In late January 2021, National Experiential secured permission from the buildings themselves.  The owners of the Aon Center and the Prudential Building agreed to allow National Experiential to project the proposed images on their facades.  *Id.* at ¶ 20.  In exchange, National Experiential paid $325,000 in fees.  *Id.*

The upfront costs were high.  So, National Experiential turned to a third-party invoice factor, Bluevine Capital, Inc., for a cash advance.  *Id.* at ¶ 23.

To prevent nonpayment, Bluevine typically releases cash only after invoice verification.  *Id.* at ¶ 24.  Basically, before providing funds in advance, Bluevine wanted an assurance that National Experiential would get paid (so that Bluevine could get repaid).  As a result, someone

other than National Experiential – either MacDonald Media, Nike, or Wieden + Kennedy – needed to confirm the invoices (without objection or defense) before Bluevine would disperse funds. *Id.*

In addition to invoice verification, Bluevine typically waits to release funds until after performance. *Id.* But National Experiential needed the money *before* performance.

National Experiential started laying the groundwork for the financing from Bluevine. On January 29, 2020, National Experiential emailed MacDonald Media, copying Bluevine, to verify and confirm payment for $1,030,000, meaning the full amount due to National Experiential for the building projections. *Id.* at ¶ 26; *see also* 1/29/20 Email (Dckt. No. 49-4).[3]

National Experiential stated that no "POP [proof of performance] was provided." *See* 1/29/20 Email (Dckt. No. 49-4). It asked MacDonald Media to respond "'confirmed' to confirm that this invoice is being processed for payment." *Id.* MacDonald Media replied "[c]onfirming" for the named invoices. *Id.*; *see also* Second Am. Cplt., at ¶ 28 (Dckt. No. 49).

Bluevine then advanced funds to cover the upfront costs. *See* Second Am. Cplt., at ¶ 29 (Dckt. No. 49).

## III.    Permit Problems

In early February 2020, MB Real Estate's private events coordinator, Kassandra Perez, told National Experiential that the City did not object to the projections. *Id.* at ¶ 21. Perez requested approval letters from the building operators, which she apparently forwarded to the City. *Id.*

---

[3] The cover page accompanying the email chain exhibit lists the date as "1-29-19." *See* 1/29/20 Email (Dckt. No. 49-4). However, the emails themselves are dated "January 29, 2020." So, the Court labels the emails as "1/29/20," not "1/29/19."

National Experiential paid the City $116,044.50 on February 8. *Id.* at ¶ 22. On February 10, the company began setting up equipment and structures for the building projections in Millennium Park. *Id.* Everything seemed to be on track.

But things went off the rails on February 12, two days before the anticipated display.

On February 12, an MB Real Estate employee (Micah Lane) sent National Experiential an email that put an end to the plan for the light show on the Aon Center and the Prudential Building. He told the company that "the activation [of the Millennium Park Project] will not be moving forward and all activity related to this activation should cease immediately to mitigate costs for all involved." *Id.* at ¶ 33.

The next day, National Experiential learned more about the reason behind Lane's email. The City had determined that the projections required permits. *Id.* at ¶ 34.

With All-Star weekend just a day away, National Experiential started scrambling. The company retained counsel from two Chicago law firms to get the project back on track. *Id.* at ¶ 35. National Experiential came up with a few possible workarounds to the permit roadblock, such as removing the "Jumpman" logo from the projection, seeking a temporary restraining order against the City of Chicago, or lobbying the Mayor's office to support the project. *Id.* at ¶ 36.

MacDonald Media authorized National Experiential to pursue only one workaround. They tried to convince the City that the projections were "art," not "commercial," and thus not subject to the ordinances in question. *Id.* at ¶ 37. That approach failed. *Id.* at ¶ 38.

On February 14 – the day the projections were slated to begin – Zoning Administrator Patrick Murphey told National Experiential that "this has evolved into a much larger issue that appears to go well beyond zoning." *Id.* About forty minutes later, Nike sent the materials to the City arguing that the projections were artistic, not commercial expression. *Id.*

Only ten minutes after Nike passed along those materials to the City, National Experiential got a firm answer that the project was a no-go. It received an email from Kara Bachman, the Executive Director of the Chicago Sports Commission. *Id.* at ¶¶ 39–40. Bachman declared that the project was not happening, and she didn't pull any punches. She wrote: "You do not have approval to project. It's simple. NOT APPROVED." *Id.* at ¶ 39.

Bachman was not involved in prior discussions about the projections. *Id.* So, her involvement threw National Experiential for a loop. *Id.*

According to the complaint, Bachman and the Commission asserted their influence because they had their own ideas about projections for All-Star weekend. *Id.* at ¶ 41. Specifically, they wanted the Prudential Building lit up in red, the color of the Chicago Bulls. *Id.* So, Bachman and the Commission "exerted pressure behind the scenes" – that is, until Bachman burst onto the scene with an all-caps "NOT APPROVED." *Id.*

Based on Bachman's email, Nike told National Experiential that the building projection plan was a no-go, mere hours before the display was meant to go up. *Id.* at ¶ 42. At that point, National Experiential stopped trying to get approval from the City. *Id.* at ¶ 43.

When the building projection plans fizzled, the rest of National Experiential's All-Star weekend plans flamed out, too.

On February 13, MacDonald Media told National Experiential to hold off on deploying the guerilla marketing teams for a day. *Id.* at ¶ 30. The next day (February 14), MacDonald Media called off the guerilla teams. *Id.* at ¶ 31. And MacDonald Media said that the United Center "bat signal" project wasn't happening, either. *Id.*

National Experiential was left holding the bag. Nike, Wieden + Kennedy, and MacDonald Media have not paid National Experiential for the nixed building displays or for the guerilla teams associated with the United Center display. *Id.* at ¶¶ 32, 45.

## IV.    The Litigation

National Experiential brought a trio of lawsuits after the implosion of the All-Star weekend project. It filed this suit in New York state court, which Defendants removed to the U.S. District Court for the Eastern District of New York. *See* Notice of Removal (Dckt. No. 1). The case was later transferred to this district. *See* 7/31/21 Min. Order (Dckt No. 32).

In a separate suit – also pending before this Court – National Experiential sued the City, raising First Amendment and breach-of-contract claims. *See Nat'l Experiential, LLC v. City of Chicago*, 590 F. Supp. 3d 1116, 1118 (N.D. Ill. 2022). In a third suit, National Experiential sued MacDonald Media in New York state court. *See Nat'l Experiential, LLC v. MacDonald Media, LLC*, Index No. 604302/2020 (N.Y.).

In the case at hand, National Experiential filed a six-count complaint against Nike and Wieden + Kennedy.

Count I is for anticipatory breach of contract. *See* Second Am. Cplt., at ¶¶ 46–57 (Dckt. No. 49).

Count II is for breach of the implied covenant of good faith and fair dealing. *Id.* at ¶¶ 58–63.

National Experiential asserted a *quantum meruit* theory in Count III, but later withdrew this cause of action. *See* Pl.'s Resp. to Def.'s Mtn. to Dismiss, at ii (Dckt. No. 68); Defs.' Mem. in Support of Mtn. to Dismiss, at 1 (Dckt. No. 65).

Count IV is for breach of the Bluevine contract. *See* Second Am. Cplt., at ¶¶ 71–77 (Dckt. No. 49). National Experiential claims that it was a third-party beneficiary.

Count V is an account stated claim. *Id.* at ¶¶ 79–84.

Finally, Count VI is a promissory estoppel claim. *Id.* at ¶¶ 85–89.

Defendants moved to dismiss for failure to state a claim. *See* Mtn. to Dismiss (Dckt. No. 64).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

**Analysis**

## I.    Anticipatory Breach of Contract (Count I)

The first claim is for anticipatory breach of contract.  The complaint alleges that Nike and Wieden + Kennedy committed an anticipatory breach by cancelling National Experiential's project and failing to provide payment.  *See* Second Am. Cplt., at ¶¶ 46–57 (Dckt. No. 49).

Under New York law,[4] an anticipatory breach of contract "can be either a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach or a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach."  *Norcon Power Partners v. Niagara Mohawk Power Corp.*, 705 N.E.2d 656, 659 (N.Y. 1998).  Basically, anticipatory breach occurs if a party tells the other party that it will breach the contract, or takes action that would render it unable to perform.

Expressing doubt is not enough.  "For an anticipatory repudiation to be deemed to have occurred, the expression of intent not to perform by the repudiator must be 'positive and unequivocal.'"  *Princes Point LLC v. Muss Dev. LLC*, 87 N.E.3d 121, 124 (N.Y. 2017) (citation omitted).

Defendants take two shots at Count I.  First, Defendants believe that National Experiential wasn't "ready, willing, and able" to perform because it did not obtain the necessary permits to project the lasers on the Aon Center and Prudential Building.  *See* Defs.' Mem., at 8 (Dckt. No. 65).  Second, Defendants argue that National Experiential cannot recover for the guerilla teams and United Center projects, either, because the contract is indivisible.  *Id.* at 9–11.

---

[4]  Both parties agree that New York law applies.  *See* Defs.' Mem. (Dckt. No. 65) (citing New York law); Pl.'s Resp. (Dckt. No. 68) (same).  So, New York law controls.  *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("We honor reasonable choice-of-law stipulations in contract cases[.]").

The Court will address the arguments in that order.

## A.    "Ready, Willing or Able"

Defendants begin with the argument that National Experiential wasn't in a position to perform, so it can't bring a claim for anticipatory breach.  In Defendants' view, National Experiential wasn't "ready, willing, and able" to perform because it failed to obtain the necessary permits for the light displays on the Aon Center and Prudential Building.  *Id.* at 8.

The non-repudiating party bears the burden to show its "readiness, willingness and ability to perform."  *Pesa v. Yoma Dev. Grp., Inc.*, 965 N.E.2d 228, 230 (N.Y. 2012).  Party A can't fault Party B for an anticipatory breach if Party A couldn't perform anyway.

"The willingness and ability to perform need not continue after the repudiation; it is merely required that they should have existed before the repudiation and that the plaintiff would have rendered the agreed performance if the defendant had not repudiated."  *See* 10 Corbin on Contracts § 54.20 (2023); *see also Record Club of America, Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1275 (2d Cir. 1989) (applying New York law).

National Experiential concedes that it did not *plead* that it was ready, willing, and able to perform.  *See* Pl.'s Resp., at 7 (Dckt. No. 68).  But the company argues that it only needs to show that it was ready, willing, and able to perform *at trial*.  *Id.*

Here, the face of the complaint shows that National Experiential was not ready, willing, and able to perform.

Bachman (the Chicago Sports Commission official) told National Experiential that it "[did] not have approval to project."  *See* Second Am. Cplt., at ¶ 39 (Dckt. 49).  The company needed the City's permission to project onto the buildings.  But it didn't have it.

It's simple. National Experiential needed a permit. It didn't have a permit. So it couldn't perform. It needed what it didn't have. And without it, National Experiential couldn't perform.

Without permission from the City, National Experiential could not perform the laser projection portion of the contract. It was not ready, willing, and able. It was unready and unable to perform.

National Experiential argues its claim survives even if it was not ready, willing, and able. The company asserts that Defendants actively frustrated its ability to perform. *See* Pl.'s Resp., at 8 (Dckt. No. 68).

When National Experiential attempted to resolve the permit problem a few days before All-Star weekend, Defendants left it with only one option: convince the City to view the projections as artistic, not commercial. *Id.*; *see also* Second Am. Cplt., at ¶¶ 35, 37 (Dckt. No. 49) National Experiential contends that it would have tried different tactics if Defendants had given it permission to do so. *See* Pl.'s Resp., at 8 (Dckt. No. 68).

As National Experiential sees it, Defendants stood in its way, and prevented its performance. So, if National Experiential couldn't perform, that's because the non-performance was Defendants' fault. They pulled the rug out, and tied its hands.

A party can't be faulted for non-performance caused by the other party to a contract. "[I]f one party to a contract hinders, prevents or makes impossible performance by the other party, the latter's failure to perform will be excused." *St. Christopher's, Inc. v. JMF Acquisitions, LLC*, 2021 WL 6122674, at *4 (2d Cir. 2021) (quoting 13 Williston on Contracts § 39:3 (4th ed. 2000 & 2009 Supp.)) (analyzing New York law).

"[A] party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition." *Ctr. for Specialty Care, Inc. v. CSC Acquisition I, LLC*, 185 A.D.3d 34, 42 (N.Y. App. Div. 2020); *see also Frank Brunckhorst Co., LLC v. JPKJ Realty*, LLC, 129 A.D.3d 1019, 1020 (N.Y. App. Div. 2015) (holding that the defendant raised triable issue of fact about whether the plaintiff caused its failure to achieve a contractual condition); *ADC Orange, Inc. v. Coyote Acres, Inc.*, 857 N.E.2d 513, 517 (N.Y. 2006) (declining to dismiss a claim for specific performance where stalled negotiations may have impeded the other side's performance).

Nike and Wieden + Kennedy argue that National Experiential does not show causation. *See* Defs.' Reply, at 3 (Dckt. No. 69). In their view, the City required a permit, and National Experiential lacked one. *Id.* at 4. As they see it, *Defendants* did not prevent National Experiential from performing – *the lack of permit* prevented National Experiential from performing. *Id.* at 4–5. Not so.

Viewed in a light favorable to Plaintiff on a motion to dismiss, National Experiential adequately alleges that Defendants prevented its performance. The company asserts that "Chicago's most powerful business and sports leaders" "exerted pressure behind the scenes with city officials" to prevent the projections onto the Aon Center and Prudential Building. *See* Second Am. Cplt., at ¶ 41 (Dckt. No. 49). That allegation does not expressly mention Nike or Wieden + Kennedy, but it does suggest that something else was afoot.

National Experiential further contends that it wanted to take measures – like seeking a TRO against the City or lobbying City officials – to get the laser-light display back on track. *Id.* at ¶ 36. But Nike and Wieden + Kennedy wouldn't let it pursue those measures. *Id.* at ¶ 37.

14

Maybe National Experiential could have obtained a TRO, or successfully lobbied the City. Or maybe not. But if National Experiential would have succeeded in those alternative measures, then Defendants' refusal to allow National Experiential to take those steps may have caused its inability to perform.

At bottom, National Experiential has alleged facts to suggest that Defendants *prevented* its performance, by limiting its ability to remedy the permit problem. And if Nike and Wieden + Kennedy prevented National Experiential's performance, they could not cancel the contract based on National Experiential's inability to perform. In other words, if Defendants *caused* National Experiential's inability to perform, then National Experiential has a potential avenue to bring a claim for anticipatory breach.

Defendants make two final arguments. First, they point out that National Experiential did not tell them until the day before the project that it could not obtain the required permits. *See* Defs.' Mem., at 11 (Dckt. No. 65). Second, Defendants contend that National Experiential did not suffer prejudice from the untimely cancellation (since it couldn't perform anyway).

But those arguments don't get Defendants very far, considering that National Experiential alleges that Defendants *caused* its inability to get the permits.

National Experiential didn't need to give Defendants advance notice of a problem if Defendants caused the problem. And if Defendants prevented National Experiential from performing, National Experiential suffered prejudice.

In sum, the complaint itself shows that National Experiential was not "ready, willing, and able" to perform. However, the company plausibly alleges that Defendants prevented it from completing the project. So, for now, it can move forward with its claim even though it was not ready, willing, and able to perform.

In essence, National Experiential alleges that it was not able to perform because Defendants prevented its performance. That theory might not pan out. After all, one wonders why Nike would want to pull the plug on its own project, a laser-light show depicting the greatest basketball player of all time at the height of his powers.

Maybe Defendants could have authorized National Experiential to seek a TRO. But even if Defendants prevented National Experiential from running to the courthouse, that decision did not necessarily cause National Experiential's non-performance. Filing for a TRO to get an emergency permit seems fraught with peril. So does phoning a friend in the Mayor's office.

The claim might be tough sledding. Time will tell. But that's what discovery is for.

## B.    Divisibility

Next, the Court addresses Defendants' arguments about divisibility. The question is whether the other parts of the contract (the "bat signal" and the guerilla marketing teams) were divisible from the laser-light show.

Under New York law, "[w]hether the parties intended to treat both agreements as mutually dependent contracts, the breach of one undoing the obligations under the other, is a question of fact. In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 127 (2d Cir. 2022) (quoting *Rudman v. Cowles Commc'ns*, 280 N.E.2d 867, 873 (N.Y. 1972)); *see also* 15 Williston on Contracts § 45:5 (4th ed. 2023).

"Under New York law, 'a contract will not be regarded as severable' unless '(1) the parties' performances can be apportioned unto corresponding pairs of partial performances, and (2) the parts of each pair can be treated as agreed equivalents.'" *Mun. Cap. Appreciation*

16

*Partners, I, LP v. Page*, 181 F. Supp. 2d 379, 394 (S.D.N.Y. 2002) (quoting *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992)).

"In general, when two parties have made two separate contracts it is more likely that promises made in one are not conditional on performances required by the other." *Novick v. AXA Network, LLC*, 642 F.3d 304, 312 (2d Cir. 2011) (cleaned up) (analyzing New York law); *see also Rudman*, 280 N.E.2d at 873–74.

Defendants contend that the contract was indivisible. *See* Defs.' Mem., at 9 (Dckt. No. 65). According to Defendants, if National Experiential wasn't "ready, willing, and able" to perform part of the contract, it cannot recover, full-stop. The contract was all-or-nothing.

National Experiential disagrees. *See* Pl.'s Resp., at 9 (Dckt. No. 68). In its view, the contract had four severable provisions, covering: (1) the "bat signal," (2) the guerilla teams, (3) the Aon Center projection, and (4) the Prudential Building projection. *Id.* at 10.

Originally, MacDonald Media and National Experiential agreed to three separate contracts. *See* Second Am. Cplt., at ¶ 13 (Dckt. No. 49). MacDonald Media later replaced those contracts with a single, two-page contract. *Id.* at ¶ 14.

The use of one contract – instead of a trio of contracts – suggests that the parties intended an indivisible contract. *See Novick*, 642 F.3d at 312. Some language in the contract suggests that the parties intended an indivisible contract, too.

The first page of the contract included a provision about "proof of performance requirements" before payment. In full, the provision reads: "Payment will be made on a monthly basis. It is due 30 days after the end of each month's contracted activity is completed, provided MacDonald Media has been paid, signed contract is received and proof of performance

requirements are met in accordance with the terms on the back of this contract." *See* 12/20/19 Contract (Dckt. No. 49-2).

The terms on the back of the contract required photos before processing of payment. "At least 1 close up and 1 approach photograph of each creative execution posted must be provided in order for payment to be processes [sic]." *Id.*

Under those provisions, payment was contingent upon Defendants receiving photos of *all* the completed projects. A photo of *each execution* needed to precede payment processing. Otherwise, National Experiential would not receive payment.

To be sure, some aspects of the contract suggest that it *could* be divisible. For example, page one of the contract lists four separate projects. *See* 12/20/19 Contract (Dckt. No. 49-2). Each project has separate consideration and a separate start / end date. *Id.*

Different contract provisions include different notes, too. For example, text underneath the provisions about the building projections reads: "Building and projection site permission granted, non-cancellable." *Id.* By contrast, the "Bat Signal / Guerilla Projection – United Center" provision of the contract noted that *no* permission or permit was needed. *Id.* ("Guerilla projection without permission or permit. Subject to relocation, fine, or shutdown.").

National Experiential has pointed to contractual provisions suggesting the parties intended a divisible contract. At the motion-to-dismiss stage, National Experiential does enough to allege that the contract was divisible. So, this Court cannot declare, as a matter of law, that a failure to perform on the light-show portions of the contract would prevent a recovery on the other portions of the contract.

## II.     Good Faith and Fair Dealing (Count II)

Count II alleges a violation of the implied covenant of good faith and fair dealing.  *See* Second Am. Cplt., at ¶¶ 58–63 (Dckt. No. 49).  Basically, National Experiential claims that Defendants violated the covenant by barring it from pursuing alternative routes to obtain permits for the building projections.  *Id.* at ¶ 60.

"Under New York law, implicit in every contract is a covenant of good faith and fair dealing which encompasses any promises that a reasonable promisee would understand to be included."  *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (cleaned up); *see also New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995).

"A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract."  *Deer Park Enterprises, LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (N.Y. App. Div. 2008) (cleaned up).  Therefore, "[a] claim for violation of the covenant survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract."  *JN Contemp. Art*, 29 F.4th at 128.

National Experiential alleges that Nike and Wieden + Kennedy violated the duty of good faith and fair dealing by preventing it from obtaining the necessary permits.  *See* Second Am. Cplt., at ¶ 60 (Dckt. No. 49).  The company contends that it was not "ready, willing, and able" to perform its contractual obligations *because* Defendants prevented it from getting the permits.  *Id.* at ¶ 36.  So, the same conduct forms the basis of the breach of contract claim (Count I) and the good faith and fair dealing claim (Count II).

National Experiential argues that Count II "is not duplicative" of Count I because Count II only involves the Aon Center and Prudential Building projections, whereas Count I involved the United Center and guerilla teams, too. *See* Pl.'s Resp., at 14 (Dckt. No. 68).

That argument does not move the needle. Count II duplicates part of Count I. Count II is a slice of the Count I pie. Put differently, the conduct alleged to violate Count II is "intrinsically tied" to Count I. *Deer Park Enterprises*, 57 A.D.3d at 712.

So, the Court dismisses Count II.[5]

## III.    Third Party Beneficiary (Count IV)

Count IV alleges that Nike and Wieden + Kennedy breached the Bluevine agreement, and that National Experiential is entitled to damages as an intended third-party beneficiary of that agreement. *See* Second Am. Cplt., at ¶¶ 71–77 (Dckt. No. 49).

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound. The essential elements of a contract are subject matter, parties, promise, terms and conditions, and price or consideration. The absence of any of the essential elements of a contract is a bar to its enforceability." *See* 22 N.Y. Jur. 2d Contracts § 9 (2023); *see also Kolchins v. Evolution Markets, Inc.*, 128 A.D.3d 47, 60 (N.Y. App. Div. 2015), *aff'd* 96 N.E.3d 784 (N.Y. 2018).

---

[5] As an aside, one wonders if the contract in question could give rise to an implied covenant of good faith and fair dealing in the situation at hand. Usually, the implied covenant of good faith and fair dealing arises when one party to a contract takes advantage of a provision that vests that party with discretion, and abuses that discretion in a way that the parties did not anticipate at the time of contract formation. That's the law in Illinois. The contract in question is governed by New York law, and New York can be a little different. If the law is the same in New York, then it is difficult to see how the allegations could give rise to a claim under the implied covenant of good faith. In any event, the parties did not brief it, so the Court won't reach it.

In Defendants' view, the complaint does not plead the elements of an enforceable contract – including offer, acceptance, and consideration. *See* Defs.' Mem., at 15–18 (Dckt. No. 65). The punchline is that National Experiential has not adequately alleged consideration.

"The enforceability of an agreement is dependent upon the existence of consideration." *See* 22 N.Y. Jur. 2d Contracts § 11; *see also Beitner v. Becker*, 34 A.D.3d 406, 407 (N.Y. App. Div. 2006) ("All contracts must be supported by consideration, consisting of a benefit to the promisor or a detriment to the promisee."). "A promise or agreement without consideration is usually unenforceable." *See* 22 N.Y. Jur. 2d Contracts § 64.

"Generally, past consideration is no consideration and cannot support an agreement because the detriment did not induce the promise. That is, since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise." *Gutman v. Gutman*, 31 A.D.3d 709, 710 (N.Y. App. Div. 2006) (internal quotation omitted).

An exception exists if the alleged past consideration was expressed in writing. *Id.* "A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed." *See* N.Y. Gen. Oblig. Law § 5-1105 (McKinney).

Basically, Defendants say that they got nothing out of the contract, since with or without Bluevine funding, National Experiential was obligated to perform. According to Defendants, "[National Experiential] was already contractually obligated to perform under the Plaintiff-MacDonald Contract and nothing in the Plaintiff-MacDonald Contract obligated Defendants to provide any deposit or up-front monies in any event. Thus, BlueVine's provision

21

of funding provided no new benefit to the Defendants whatsoever." *See* Defs.' Reply, at 12 (Dckt. No. 69).

From National Experiential's perspective, the Bluevine agreement aided both National Experiential and Defendants: "it enabled immediate funding to meet the project's substantial needs." *See* Pl.'s Resp., at 16 (Dckt. No. 68).

The Court agrees with Defendants. To be sure, National Experiential secured the funding so that it could complete a project for Defendants.

But if National Experiential had not secured funding from Bluevine (or someone else), its performance obligation would not have gone away. National Experiential had to perform no matter what. So, Defendants did not gain anything new from the Bluevine agreement.

And past consideration is not "expressed in the writing" (meaning, the Bluevine agreement). *See* N.Y. Gen. Oblig. Law § 5-1105 (McKinney); *see also* 1/29/20 Email (Dckt. No. 49-4).

Therefore, the Court dismisses Count IV.

## IV.   Account Stated (Count V)

Count V is a claim for something called "account stated" under New York law. National Experiential contends that Defendants owe the amounts due under the Bluevine invoices. *See* Second Am. Cplt., at ¶¶ 79–84 (Dckt. No. 49).

"An account stated is an agreement, express or implied, between the parties to an account based upon prior transactions between them with respect to the correctness of account items and a specific balance due on them which is independent of the original obligation[.]" *Caring Pros., Inc. v. Landa*, 152 A.D.3d 738, 739 (N.Y. App. Div. 2017).

"There can be no account stated where no account was presented or where any dispute about the account is shown to have existed." *Abbott, Duncan & Wiener v. Ragusa*, 214 A.D.2d 412, 413 (N.Y. 1995) (citation omitted). So, "[an] essential element of an account stated is an agreement with respect to the amount of the balance due." *Seneca Pipe & Paving Co. v. S. Seneca Cent. Sch. Dist.*, 83 A.D.3d 1540, 1541 (N.Y. App. Div. 2011) (citation omitted). Therefore, an account stated claim fails when no account is presented, or if a dispute exists about the amount owed. *Id.* at 1542 (citation omitted); *see also M & A Const. Corp. v. McTague*, 21 A.D.3d 610, 611 (N.Y. App. Div. 2005).

"[A]n account stated cannot be made an instrument to create liability when none otherwise exists but assumes the existence of some indebtedness between the parties or an express agreement to treat the statement in question as an account stated[.]" *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp., Inc.*, 171 A.D.2d 479, 485 (N.Y. App. Div. 1991) (citation omitted); *see also Gurney, Becker & Bourne, Inc. v. Benderson Dev. Co.*, 394 N.E.2d 282 (N.Y. 1979).

"[A] claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract." *Martin H. Bauman Assocs.*, 171 A.D.2d at 485; *see also Erdman Anthony & Assocs., Inc. v. Barkstrom*, 298 A.D.2d 981, 981 (N.Y. App. Div. 2002).

In Defendants' view, National Experiential's "account stated claim is a naked attempt to collect under a disputed contract and must fail accordingly." *See* Defs.' Mem., at 20 (Dckt. No. 65). Defendants contend that National Experiential failed to establish any indebtedness. *Id.*

Defendants are right. The parties disagree about the amount due.

Nike and Wieden + Kennedy believe that they owe nothing to Bluevine at all. *See* Defs.' Mem., at 15–18 (Dckt. No. 65). National Experiential thinks Nike and Wieden + Kennedy are

indebted to the tune of over $1 million. *See* Second Am. Cplt., at ¶ 84 (Dckt. No. 49). A lot of daylight stands between $0 and $1 million. The parties do not agree about how much they owe.

Also, National Experiential wants to use account stated as an alternative to breach of contract. It seeks the same amount ($1,030,000 or more) under its account stated claim that it seeks under its breach of contract claim. *See* Second Am. Cplt., at ¶¶ 78, 84 (Dckt. No. 49).

But a plaintiff cannot use an account stated claim as a backdoor for a breach of contract claim. *See Martin H. Bauman Assocs.*, 171 A.D.2d at 485; *see also Barkstrom*, 298 A.D.2d at 981. Contract claims and account stated claims are different beasts, not two sides of a coin. It's one or the other, and not both. National Experiential's claim falls into the breach of contract bucket, not the account stated bucket.

Therefore, the Court dismisses the account stated claim.

## V.     Promissory Estoppel (Count VI)

Count VI is a claim for promissory estoppel. *See* Second Am. Cplt., at ¶¶ 86–89 (Dckt. No. 49).

The claim is about the alleged promise that Defendants made to pay National Experiential's invoices. Recall that National Experiential needed to secure money up front so that it could pay the fees and make arrangements for the laser display. *Id.* at ¶¶ 23–29. National Experiential paid $325,000 to the two buildings, and paid $116,044.50 to the City. *Id.* at ¶¶ 20, 22.

National Experiential obtained those funds in advance from Bluevine, based on an assurance that National Experiential would get paid by Defendants. National Experiential sent an email to Defendants, attaching the invoices and asking them to "confirm" that the invoices

24

were "being processed for payment." *See* 1/29/20 Email (Dckt. No. 49-4). MacDonald Media

responded: "Confirming for invoices 10198, 10199," which totaled more than $1 million. *Id.*

According to the complaint, Defendants (through MacDonald Media) "replied to

Plaintiffs and Bluevine's representatives confirming the Invoices without objection and that they

would be processed for payment to Bluevine without proof of performance. *See* Second Am.

Cplt., at ¶ 28 (Dckt. No. 49). National Experiential alleges that it relied on that promise to pay

the invoices.

"To establish promissory estoppel, a party must prove a clear and unambiguous promise,

reasonable and foreseeable reliance by the party to whom the promise is made, and an injury

sustained in reliance on that promise." *DelMestro v. Marlin*, 168 A.D.3d 813, 816 (N.Y. App.

Div. 2019) (internal quotation marks omitted).

"A promise that is too vague or too indefinite is not actionable under a theory of

promissory estoppel; the alleged promise must be clear and unambiguous." *Cambridge Cap.*

*LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 458 (S.D.N.Y. 2021) (internal quotation marks

omitted) (applying New York law).

According to Defendants, Count VI fails because there was no clear promise, and any

reliance was not reasonable or foreseeable. *See* Defs.' Mem., at 18–19 (Dckt. No. 65).

As explained in the discussion of the breach of contract claim, National Experiential has

plausibly pleaded that MacDonald Media's reply-all email constituted a promise.

National Experiential also has done enough to plead foreseeable and reasonable reliance.

An email from MacDonald Media apparently promised that Bluevine would be paid without

proof of performance. *See* Second Am. Cplt., at ¶ 86 (Dckt. No. 49). Relying on that promise,

National Experiential borrowed money from Bluevine and used those funds to pay the upfront costs for the building projections. *Id.* at ¶ 87.

Taking National Experiential's allegations as true, its reliance was reasonable and foreseeable. Therefore, the Court will not dismiss Count VI.

### Conclusion

For the reasons stated above, Defendants' motion to dismiss is hereby granted in part and denied in part.

Date: August 5, 2024

_____

Steven C. Seeger
United States District Judge

26